CHANCERY.

Case 94.

July 3.

Case stated.

## Milward, &c. vs Cochran, &c.

### ERROR TO THE FAYETTE CIRCUIT.

*Attachment in chancery. Lien. Execution lien. Lis pendens.*

JUDGE BRECK delivered the opinion of the Court.

COCHRAN & Co. filed their bill seeking to subject two slaves to the payment of a note which they held upon James W. Cryer:

1st. Upon the ground that after the slaves had been given to Cryer by his father-in-law, Spencer Cooper, and had vested in him absolutely as his property, he had, for the purpose of hindering and preventing his creditors from levying upon them, contrived a deed of loan, by which the title to the slaves had vested in said Cooper, but the possession had still remained with Cryer.

2d. They alledge that after the death of Cooper, the wife of Cryer had claimed the slaves as her separate property, and they were then in possession of Mary Cooper, who was holding them in trust for Mrs. Cryer; and in the event they should be decided to be her separate property, the complainants sought to subject them, upon the ground that the note, which they exhibited upon James W. Cryer, was given for necessaries furnished for the support of Mrs. Cryer and family.

Cryer and wife and Mary Cooper were made defendants, and subpœna served upon them, endorsed, that the object of the bill was to attach the two slaves therein named, and their hire, for the payment of the complainant's demand.

The complainants afterwards filed an amended bill, in which they alledge that the slaves had been decided to be the property of James W. Cryer. That the slaves had been both sold under executions which had a prior lien to that which attached upon the exhibition of their bill. That the proceeds of the one had been entirely absorbed by executions having such prior lien, and also a portion

of the other. That a portion, however, of the proceeds of the slave Maria, had been paid over to the plaintiffs in error, Milward and Ennis, and to Robert King, J. & W. R. Chew for the use of R. Pindell and J. G. Morrison, or to Constables for their use. They alledge that Milward had received $41 50, Ennis $49 03, and also certain sums had been paid over to the other named individuals. They make them all defendants, alledge that their liens were acquired subsequent to the lien of complainant in virtue of their original bill, and pray that they may be decreed to pay over to them such sums as may be necessary for the payment of their claim. King having died, the suit abated as to him.

Process as to Morrison, was returned, no inhabitant, and in regard to the Chews, Pindell answered, showing that what had been received by him upon executions in their name, had been paid over by him as assignee in bankruptcy, agreeably to a decree of the Fayette Circuit Court. The Court decreed that Milward and Ennis pay over to the complainant the alledged sums in their hands, and that they also pay complainants their costs. The *Court, however, continued the cause, with leave to Mil*ward and Ennis to be substituted to any claims of complainant on Cryer, or to have contribution or indemnity from any others, to which they might be entitled.

To reverse that decree, Milward and Ennis prosecute this writ of error.

The first inquiry is, whether a lien attached upon the slaves in favor of the complainants, upon the filing of their bill.

The jurisdiction of a Court of Equity to grant relief upon the first ground relied upon in the original bill, is given by the act of 1838, (3 *Stat. Law*, 116.) The 2d section of that act vests a Court of Chancery with power and jurisdiction, upon the application of a creditor, whether his debt be or be not in judgment, to set aside a sale or conveyance made for the purpose of hindering and delaying creditors in the collection of their debts, and to subject the property to the payment of the debt of the applicant. And in aid of the execution of this power, the Court is authorized to order an attachment, and to make

MILWARD, &c.
*vs*
COCHRAN, &c.

In a proceeding
under the statute
of 1838, (3 *Stat.
Law*, 116,) the
power of the
Chancellor to
subject property
to the payment
of the debts of
the defendant,
does not depend
upon the actual
levy of an at-
tachment, a lien
attaches on the
property sought
to be made sub-
ject, on filing
the bill and ser-
vice of process.

all other necessary orders for the safety and forthcoming of the property.

In this case no attachment was sued out, but we are of opinion the power of the Court to subject the property did not depend upon the actual levy of an attachment. A lien upon the slaves attached, upon the exhibition of the complainant's bill and the service of process. The only object and effect of an attachment and levy, would have been to secure more effectually the slaves against removal, and have them forthcoming to abide the decree of the Court. The suit was a *lis pendens*, and no subsequent sale or after acquired lien would destroy or affect the prior lien and right of the complainants.

The bill of the complainants, it is true, was framed with a double aspect: First, to subject the slaves under the statute, and secondly, if proved to be the separate property of Mrs. Cryer, to reach them upon the equitable principle that the consideration of the claim set up was necessaries furnished for the use of Mrs. Cryer and her family. The last ground thus contingently relied upon, did not, we think, affect the lien and right of the com-plainants to relief upon the first ground under the statute.

If the property
sought to be sub-
jected under the
statute of 1838,
by bill in chance-
ry be previously
levied upon by
execution, the
Chancellor may
follow any sur-
plus, after the
execution is sat-
sified, into the
hands of third
persons, who
may receive it
after the *lis pen-
dens* exists.

Assuming then that a lien in favor of the complainants, attached upon filing their bill, and it appearing that both slaves were sold under executions previously levied, and the entire proceeds of the one and part of the other, ap-plied in discharge thereof, the question arises whether the Chancellor was right in following the residue of the pro-ceeds into the hands of the defendants, and decreeing them to pay it over to the complainants in discharge of their claim. We think he was. It is expressly alledged in the amended bill, that the conveyance from Cryer to Cooper had been decided to be fraudulent, and that the slaves were subject to the payment of Cryer's debts. Such appears to have been the decision of this Court. The defendants, Milward and Ennis, in their answer, do not deny the allegation as to the amount of the proceeds of the slave Maria, received by them respectively, but they say they had executions against Cryer, and they re-ceived the money thereon from the Constables, and that they are ignorant of the matters and things set forth by

the complainants. They refer to their judgments and executions, but do not exhibit them. All the material facts to entitle the complainants to a decree, appear in the record. It was not necessary for them to have brought the representatives of King before the Court, nor Morrison. There appears to have been no such connection between them and Milward and Ennis, as rendered them necessary parties to entitle the complainants to a decree for the funds in their hands. They in their answer pray to be substituted to all the rights the complainants may have to any other fund, and the Court very properly continued the cause, with leave to them by cross bill, to set up their right to substitution, or to contribution from any other party.

Wherefore, the decree is affirmed.

*Pindell* for plaintiff; *Robinson & Johnson* for def'ts.